**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**URBAN GLOBAL, a Michigan limited
liability company,**

       Hon. Victoria A. Roberts

    **Plaintiff,**

       Case No. 10-12615

v.

**DIBBSBARKER, an Australian partnership,
and PAUL SCHMIDT-UILI, an individual,**

    **Defendants.**

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**I.  INTRODUCTION**

This matter is before the Court on Defendants' Motion to Dismiss based on *Forum Non Conveniens*, Improper Service, and lack of Personal Jurisdiction.  (Doc. 9).

Plaintiff, a Michigan company, brought this tort action against an Australian law firm and an Australian attorney alleging malpractice, breach of fiduciary duties, negligent misrepresentation, and fraud based on failure to disclose.  Defendants argue the Court should dismiss Plaintiff's claims based on *forum non conveniens* because this is an inherently Australian dispute, Australia is an adequate alternative forum, and the great weight of the private and public interest factors favor dismissal.  Plaintiff disagrees and says the Court must give deference to Plaintiff's choice of forum.  It says requiring

1

Plaintiff to litigate in Australia improperly shifts any inconvenience from Defendants to Plaintiff.

For the reasons stated, the Court **GRANTS** Defendants' motion to dismiss under the doctrine of *forum non conveniens*.

## II.     BACKGROUND

Plaintiff Urban Global ("Plaintiff") is a limited liability company with its principal place of business in Southfield, Michigan. Defendants are Paul Schmidt-Uili ("Schmidt-Uili") and Dibbsbarker (collectively "Defendants"). Dibbsbarker is an Australian law firm with its principal place of business in Sydney, Australia; Schmidt-Uili is an Australian partner in Dibbsbarker's Sydney office.

In July 2009, Paul Gregory ("Gregory") contacted Plaintiff and proposed it invest $1.56 Million in an Australian entity called Kornerstone International ("Kornerstone"). Before contacting Plaintiff, Gregory was a partner at Dibbsbarker; currently, he is serving time in an Australian jail for a fraud conviction. While soliciting Plaintiff, Gregory identified himself as a derivative shareholder of Kornerstone and as the person who "look[s] after all its Corporate Affairs." Gregory referred Plaintiff to Schmidt-Uili to discuss the proposed investment. Shortly thereafter, Plaintiff retained Defendants.

For several months following Plaintiff's retention of Defendants, Schmidt-Uili and other representatives of Dibbsbarker communicated with Plaintiff frequently. All communication was through mail, telephone calls, and other electronic means. In the course of their relationship, Plaintiff never traveled to Australia, and Schmidt-Uili never traveled to Michigan. Defendants completed all legal work for Plaintiff in Australia.

One responsibility Plaintiff retained Defendants for, was to assemble due diligence reports on Kornerstone, illustrating any of its legal or financial problems.  On August 11, 2009, Defendants sent Plaintiff "a fairly comprehensive due diligence checklist" to use as a starting point.  In response, Plaintiff told Defendants it wanted more information regarding Kornerstone's officers, key employees, and shareholder structure.  In addition, Plaintiff communicated it "obviously want[ed] … details of any actual or potential litigation or disputes."

Defendants compiled the updated due diligence report, which included the additional information Plaintiff wanted, and on September 25, 2009, Defendants sent it to Plaintiff.  The report stated Kornerstone does not have an agreement with Gregory but it proposes to employ him in corporate affairs in the future.  It also stated there is no current or potential litigation in relation to Kornerstone employees.

In reliance on Defendants' due diligence reports, Plaintiff invested over $1 million in Kornerstone from late summer to early winter of 2009.  In the spring of 2010, Plaintiff learned that Gregory "had been convicted of conspiring to defraud the Commonwealth of Australia."  Plaintiff contends that this was the first they had heard of the charge against Gregory.  Through email correspondence in May of 2010, Schmidt-Uili admitted that he was aware of the charge against Gregory; however, Schmidt-Uili said he believed that Kornerstone's representative informed Plaintiff of Gregory's legal situation.

Plaintiff contends Defendants had an independent duty to inform Plaintiff of Gregory's charges.  Plaintiff says if it were aware of the charges, it would not have invested in Kornerstone.  Plaintiff brought this suit alleging Defendants knew but failed

to disclose Gregory was awaiting trial on criminal fraud charges, and in reliance on Defendants' due diligence reports, it suffered damages. Plaintiff requests a jury trial.

## III. APPLICABLE LAW AND ANALYSIS

### A. Doctrine of *Forum Non Conveniens*

"A dismissal on *forum non conveniens* grounds is appropriate when the defendant establishes, first, that the claim can be heard in an available and adequate alternative forum and, second, that the balance of private and public factors listed in *Gulf Oil* [*Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)], reveals that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Duha v. Agrium Inc.*, 448 F.3d 867, 873 (6th Cir. 2006) (citation omitted). The doctrine of *forum non conveniens* is a flexible one; it should reflect the Court's assessment of all of the factors based on the particular facts of the case. *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 364 (6th Cir. 2008). Especially, the Court should weigh the fairness and convenience to the parties, as well as the practical difficulties that come with having trial in a certain place. *Id.* at 363-64 (citation omitted).

#### 1. Adequate Alternative Forum

The first inquiry under the doctrine of *forum non conveniens* is whether there is an adequate alternative forum. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009) (citation omitted). Generally, this requirement is satisfied if the defendant is "amenable to process" in the alternative forum. *Id.* An unfavorable change in the substantive law will not make the forum inadequate unless, "the remedy provided by it is

so clearly inadequate or unsatisfactory that it is no remedy at all." *Id. at 830-31; Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

Defendants say Australia is an adequate alternative forum. The declarations of Schmidt-Uili and Dean Newell, a partner at Dibbsbarker, state: (1) Australian courts recognize causes of action for legal malpractice, breaches of fiduciary duties, and fraud; (2) Schmidt-Uili is amenable to process in Australia; and, (3) since partnerships are not a separate legal entity under Australian law, Dibbsbarker is not amenable to process under that name in Australia.

Although Plaintiff may not be able to sue Dibbsbarker under that name in Australia, Defendants stated Dibbsbarker is "subject to suit in the usual way of suing Australian partnerships, by naming its individual partners." Australia may not recognize negligent misrepresentation as a cause of action, but Plaintiff can still bring an action in the Australian courts under its three other claims. The unfavorable change in Australia's substantive law does not make Australia's available remedy "so clearly inadequate or unsatisfactory that it is no remedy at all." Plaintiff fails to present any argument rebutting Defendants. For these reasons, Defendants established Australia is an adequate alternative forum.

### 2. Weighing of the *Gulf Oil* Factors

When a United States citizen files suit in its home forum, a court must give the plaintiff's choice of forum substantially heightened deference. *Duha*, 448 F.3d at 874. An explicit finding of vexation or oppression is unnecessary to dismiss a plaintiff's suit filed in its home forum; however, a court must "consider whether any oppression or

vexation to defendant [is] out of all proportion to plaintiff's convenience." *Zions First Nat'l Bank v. Moto Diesel Mexicana*, 629 F.3d 520, 525 (6th Cir. 2010) (citation and internal quotations omitted). To overcome the heightened deference accorded to a U.S. plaintiff suing at home, a defendant must establish that the balance of convenience weighs strongly in its favor. *Duha*, 448 F.3d at 874-75.

In considering the application of the doctrine of *forum non conveniens*, a court must apply the *Gulf Oil* factors separately to claims that are "analytically distinct" from one another. *Id.* at 879. To determine whether claims are analytically distinct, a court must "focus on the precise issues to be tried" and whether they require different types of evidence or proof. *See id.* at 879-80. Here, Plaintiff claims malpractice, breach of fiduciary duties, negligent misrepresentation, and fraud based on failure to disclose; each claim sounds in tort.

Although each claim has distinct specific elements, they all require Plaintiff to show Defendants had a duty which was breached. Each claim also requires Plaintiff to show it suffered an injury as a proximate cause of Defendants' breach. Since inadequate legal representation is the basis of each claim, the issues tried will be similar for all of the claims (e.g. did Defendants have a duty to disclose Gregory's criminal charge; did Defendants disclose that information; was Defendants' representation negligent; did Plaintiff suffer an injury as the result of the alleged inadequate legal representation; etc.). Accordingly, the evidence used will be similar for each claim (e.g. documents illustrating communications between Plaintiff and Defendants; documents underlying Kornerstone's shareholder and organizational structure; testimony from

representatives of Plaintiff, Dibbsbarker, and Kornerstone involved in the dispute; testimony from experts on duties of legal representation, etc.).

Although all of Plaintiff's claims are similar, fraud based on failure to disclose ("silent fraud") has the most notable differences. To prove silent fraud under Michigan law, a plaintiff must show the defendant "suppressed [the truth] with an intent to defraud." *Elliott v. Therrien*, No. 288235, 2010 WL 293071, at *5 (Mich.App. Jan 26, 2010). The requirement to show intent makes this claim more difficult to prove. Furthermore, silent fraud has a heightened standard of proof; a plaintiff must prove the elements by clear and convincing evidence. *Id.* Nevertheless, the types of evidence for silent fraud will be the same as Plaintiff's other claims. No claim is "analytically distinct" from another, as to warrant an individual application of the *Gulf Oil* factors.

### i. Private Interest Factors

The private interest factors the Court must consider include:

(1) relative ease of access to sources of proof;
(2) availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance for willing witnesses;
(3) possible problems of enforcing a judgment if one is obtained; and,
(4) all other practical problems that may impede an easy, expeditious and inexpensive trial.

*Estate of Thomson*, 545 F.3d at 364; *Ridley Bagel, Ltd. v. Kellogg Co.*, 233 F.Supp.2d 853, 858 (E.D.Mich.2002) (citation omitted).

The Court must weigh which forum offers greater ease of access to relevant documents. *Duha*, 448 F.3d at 876. The analysis should consider the location of the documents and the ability to compel document discovery. *Id.*

Defendants say the relevant documents include Kornerstone transactional documents and those illustrating Kornerstone's corporate and shareholder ownership structure; they contend Kornerstone has those documents in Australia.  Defendants say the transactional documents are relevant to refute the allegation that Kornerstone was going to employ Gregory as its officer of corporate affairs.  Defendants state they need to examine the corporate documents to determine the nature, significance, job description, responsibilities and authority of the corporate affairs position, and they contend the shareholder's ownership structure documents are important to determine the materiality of Gregory's ownership interest.

Plaintiff argues that because it alleged Defendants failed to disclose a Kornerstone officer was involved in litigation, not negligence in the drafting of the transactional documents, the transactional documents are not sources of proof.  Plaintiff also asserts that even if the transactional documents are relevant, both parties already have the documents, and it continues by saying, "the location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *Wayne Cnty. Employees' Ret. Sys. v. MGIC Inv. Corp.*, 604 F.Supp.2d 969, 976 (E.D.Mich.2009)

Defendants have adequately shown that Kornerstone possesses the majority of relevant documents.  The cost to obtain the documents, even with modern technology, would be very time consuming and expensive.  Since Kornerstone is a foreign third party, the Court cannot compel it to produce the relevant documents.  *Barak v. Zeff*, 289 Fed.Appx. 907, 912 (6th Cir. 2008) (citation omitted).  This inability, along with the

inconvenience that would come with transferring obtainable documents from Australia to Michigan, favors dismissal. *See id.*

The availability of the compulsory process for unwilling witnesses and the cost of obtaining attendance of willing witnesses favors the alternate forum. Defendants state most of their witnesses live in Australia and are not subject to compulsory process. Plaintiff argues Defendants failed to identify many witnesses specifically, so the Court cannot determine whether their testimony is relevant. However, analysis under the doctrine of *forum non conveniens* does not require specific detail of the witnesses; rather, a defendant only has to provide enough information to allow a court to weigh the interests of the parties. *Piper*, 454 U.S. at 258, 102 S.Ct. 252, 70 L.Ed.2d 419. Defendants satisfied this requirement by offering general descriptions of witnesses and explaining the substance of their testimony.

The availability of the compulsory process receives little weight when a defendant fails to allege or show unwilling witnesses exist. *Duha*, 448 F.3d at 877. Defendants allege many witnesses would not voluntarily testify, citing to the cost and time it takes to travel from Sydney to Detroit. Defendants fail, however, to show unwilling witnesses exist. While the Court's lack of power to compel Australian witnesses favors Defendant's forum, this factor carries little weight.

"The cost of travel and of obtaining testimony of witnesses is an appropriate consideration in … determining whether the [plaintiff's forum] oppresses the defendant." *Zions*, 629 F.3d at 526. When analyzing the cost of obtaining attendance of willing witnesses, the Court, first, must asses "the materiality and importance of the anticipated

9

witnesses' testimony." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335 (9th Cir. 1984).  Second, it must determine which forum is more accessible and convenient to relevant witnesses.  *Id.* at 1335-36.

Plaintiff did not express who its relevant witnesses included, but they likely will be Buzz Silverman, the CEO of Plaintiff, and Eric Bean, an attorney for Plaintiff.  Both appear to reside in Michigan, and their testimony is relevant.  Plaintiff mentioned two Kornerstone directors who live in Ontario, Canada, and it said Michigan would be a more convenient forum for them.  However, since Plaintiff fails to show what the substance of their testimony is, they are not important witnesses.

The Court agrees with Defendants: Gregory is crucial.  He was central in this relationship, and Plaintiff makes him central in this suit.  In addition, Schmidt-Uili claims Gregory told him that Kornerstone's representatives informed Plaintiff about Gregory's legal situation.  Schmidt-Uili is another important witness.  Defendants assert that several Dibbsbarker representatives involved in the representation of Plaintiff are also potential witnesses.  Defendants do not specifically name these witnesses, but they refer to them by saying they appear on documents attached to Plaintiff's response.  Since the substance of their testimony will focus on the Defendants representation of Plaintiff, their testimony is relevant.   Likewise, the testimony of Kornerstone representatives, who can explain Kornerstone corporate and shareholder ownership structure, is important.  Defendants also assert they need experts in the standard of care for an Australian lawyer.  Because Australian law governs this dispute, experts on Australian attorney's professional duties are crucial witnesses.

This case is most similar to a case that affirmed dismissal based on *forum non conveniens*. In *Barak*, the dispute was between two U.S. citizens, both with strong connections to Michigan, over a land investment in Spain. 289 Fed.Appx. 907. The Sixth Circuit largely based its determination that the balance of the private interests weighed in favor of dismissal, on the fact that the majority of the witnesses and proofs were located in Spain. *Id.* at 914. Here, Plaintiff alleges Australian Defendants provided inadequate legal representation in preparing a due diligence report on an Australian company. Defendants performed all legal work in Australia. Similar to *Barak*, this matter is inherently foreign, and the majority of witnesses and proofs are located in the foreign forum.

Witness accessibility and convenience to the forum weigh strongly in favor of an Australian forum. Whether trial is in Michigan or Australia, witnesses will have to travel internationally. Defendants show there are many more potential witnesses residing in Australia than in Michigan. They also show a one-way trip from Sydney to Detroit takes approximately 20 hours and a round-trip ticket costs between $ 1,400-2,500 USD. Defendants assert that because Gregory is serving a prison sentence in Australia, trial in Michigan would make it impossible for him to testify in person. Gregory is a crucial witness to this case; whether Defendants had a duty to disclose Gregory's charge is the underlying dispute.

A court can reasonably assume a plaintiff's convenience when it sues in its home forum, and ordinarily any showing of convenience by such a plaintiff outweighs a defendant's inconvenience. However, where the balance of conveniences shows that

trial would be unnecessarily burdensome on the defendant, dismissal is proper. *Piper*, 454 U.S. at 255-56, n. 23, 102 S.Ct. 252, 70 L.Ed.2d 419 (citations omitted). On balance, the convenience to witnesses strongly favors an Australia forum; trial in Michigan would unnecessarily burden Defendants.

The fourth factor weighs in favor of the alternate forum, too. Plaintiff asserts Defendants could use letters rogatory to obtain non-party witnesses' testimony and documents located in Australia. While this may be true, the process of obtaining evidence through letters rogatory is "a difficult and time-consuming – if not altogether futile – endeavor" and one that is "notoriously inefficient." *In re Air Crash at Madrid, Spain, on Aug. 20, 2008*, No. 10-02135, 2011 WL 1058452, at *9 (C.D.Cal., Mar. 22, 2011) (citations omitted). In addition, under the Hague Convention, a defendant cannot compel live testimony, so the Court would have to rely on deposition transcripts. *Id.* (citation omitted). A trial location in which a party must rely on deposition transcripts creates an unsatisfactory condition. *Gulf Oil*, 330 U.S. at 511, 67 S.Ct. 839, 91 L.Ed. 1055. The majority of the evidence is located in Australia; using letters rogatory to discover that evidence would make trial more expensive, less expeditious, and more complicated. Neither party states there would be a problem enforcing a judgment.

In *Duha*, the court found dismissal inappropriate largely because the majority of the documents and the majority of witnesses were located in the home forum. 448 F.3d at 875-76, 877-78. Here, the dispute is inherently Australian. Plaintiff retained Defendants in connection with its investment in an Australian company, Defendants completed all of the legal work for Plaintiff in Australia, and Defendants' alleged conduct

occurred in Australia. The vexation and oppression to Defendants in a Michigan forum is out of proportion to Plaintiff's convenience: the majority of witnesses and proofs are in Australia, total travel costs for witnesses would be much greater if trial is in Michigan, and the Court lacks power to compel witnesses unwilling to testify. For these reasons, the private interest factors weigh heavily in Defendants' favor.

### ii. Public Interest Factors

The public interest factors the Court weighs when determining if dismissal based on *forum non conveniens* is appropriate include:

(1) court congestion;
(2) local interest in the matter;
(3) interest in having the trial at home with the law that governs;
(4) avoidance of conflict-of-law problems or application of foreign law; and,
(5) unfairness of burdening locals with jury duty.

*Wong*, 589 F.3d at 832 (citation omitted).

To analyze the third and fourth public interest factors, the Court must determine the substantive law that governs Plaintiff's claims. The Court applies choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). For tort claims, Michigan presumes its law applies unless there is a "rationale reason" to apply the law of another forum. *Isley v. Capuchin Province*, 878 F.Supp 1021, 1023 (E.D.Mich.1995). Where another forum has an interest in having its law applied, a court must perform a "weighing of the interests analysis." *Id.* (citations omitted). "[The] interests [evaluated] are (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of

the parties; and, (d) the place where the relationship, if any, between the parties is centered." *Ramakrishna v. Besser Co.*, 172 F.Supp.2d 926, 932 (E.D.Mich.2001) (citation omitted). Australia has an interest in having its law applied.

The alleged injury occurred in Michigan; Michigan's courts have a strong interest in protecting its citizens from injury. The conduct causing Plaintiff's alleged injury occurred in Australia. Australia's interest in regulating its rules of professional conduct, so that it can ensure attorneys obey them, is very strong.

The interests in the domicile, residence, nationality, place of incorporation, and place of business of the parties do not favor either forum. The facts surrounding Defendants' representation of Plaintiff point to Australia as being the center of the relationship: Plaintiff's investment was in an Australian entity; Defendants did all of the legal work in Australia; the "Terms of Business" included a clause stating, "New South Wales law governs legal costs" and a clause stating Defendants are obligated to the standards of Australia's Legal Profession Act; and Schmidt-Uili sent Plaintiff an email stating that he attached their standard engagement letter in accordance with Australia's Legal Profession Act. Plaintiff correctly points out, "[a]ll communications from Defendants were made to Plaintiff in Michigan." However, it is also true that all communications from Plaintiff were made to Defendants in Australia. If Plaintiff did not pursue the investment in Australia, this relationship never would have started. Australia is the central location of the parties' relationship. Because the interests favor Australia, there is a rational reason to apply Australian law. Australian law will govern.

If the trial remains in Michigan, the Court must apply Australian tort law. When a court has to apply foreign law, the public interest factors point towards dismissal. *Piper*, 454 U.S. at 252, 102 S.Ct. 252, 70 L.Ed.2d 419; *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 615 (6th Cir. 1984) (holding the public interest factors strongly favor dismissal when a court will have to apply foreign tort law unfamiliar to it).

The result of this trial will have more impact on Australia. As Defendants states, this matter is inherently Australian. Defendants are an Australian lawyer and an Australian law firm, both of which are governed by Australian law when performing due diligence on an Australian company in Australia. This case is analogous to *Estate of Thomson*, 545 F.3d 357. There, the Ohio plaintiffs brought a products liability action in their home forum based on an accident that happened in South Africa. *Id.* at 360. The defendant manufactured the vehicle according to South African's requirements. *Id.* at 366. The Sixth Circuit found that because the outcome of the case could alter those requirements, which concerned "the safety of a vehicle marketed, sold, and used in their country," South Africa had a greater interest in the case. *Id.* Based on concluding the outcome of the case had a greater impact on South Africa, it also found trying the case in Ohio would burden local jurors. *Id.*

Here, Australia has a greater interest in hearing a case that could alter the professional duties of Australian attorneys. Michigan's interest in this case is to protect one of its citizens. Australia's interests are making sure its attorneys honor their duties and ensuring the duties imposed on its attorneys are comprehensive. The outcome of this case will have a greater impact on Australia. Therefore, trying this case in Michigan

would unfairly burden locals with jury duty. *Id.* The second and fifth public interest factors favor dismissal. *Id.* Neither party asserts any court congestion problem.

Public interest factors weigh heavily in Defendants' favor.

## IV. CONCLUSION

The Court does afford the U.S. Plaintiff's home choice of forum substantially heightened deference. However, on balance, the fairness and convenience of the parties show that the private and public interest factors strongly favor an Australian forum. The Court **GRANTS** Defendants' motion to dismiss under the doctrine of *forum non conveniens*, subject to the following conditions:

1. Defendants consent to suit and acceptance of process in Australia;

2. Defendants stipulate that the United States courts can enforce any final decision; and,

3. Defendants waive any statute of limitations defense that did not exist prior to Plaintiff bringing this action.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: July 18, 2011